IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **KINDRED CAIN9 CONNECTIONS, INC.,** | |
| Plaintiff, | Case No. 1:24CV00023 |
| v. | **OPINION AND ORDER** |
| **BROOKE BOOTH, ET AL.,** | JUDGE JAMES P. JONES |
| Defendants. | |

*David W. Thomas, MICHIEHAMLETT PLLC, Charlottesville, Virginia, for Plaintiff; Charles Michael Fulton, Arlington, Virginia, for Defendants.*

In this state-law detinue action, plaintiff Kindred Cain9 Connections, Inc. (Cain9), seeks the return of Grace, a Labrador Retriever, from defendants Brooke Booth and Wendy Hasenbalg. Cain9 asserts subject-matter jurisdiction based on diversity of citizenship and amount in controversy. The defendants have filed a second motion to dismiss, this time alleging that the plaintiff lacks a factual basis for subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The motion is fully briefed and ripe for decision. For the reasons that follow, I will deny the motion.

I.

The facts of this case were previously stated in an opinion in which I denied the defendants' first motion to dismiss. Op. & Order (Aug. 8, 2024), ECF No. 17. That motion involved a facial attack on the amount in controversy and whether the

value of expected litters could be alleged by the plaintiff. Cain9 pleaded an amount of $137,000, which accounted for Grace's estimated value of $25,000 and the value of four litters averaging eight puppies each. I found that Virginia law did not preclude the plaintiff from claiming both the value of Grace and the expected value of her future litters in a detinue action.

In the present motion, the defendants argue that the damages claimed should be based on Grace's fair market value, which does not exceed $75,000. They also contend that the market value of a dog does not include potential litters. As evidence, they attach text messages from Kimberly Cain, the founder and executive director of Cain9, and an affidavit from Fabian Negron, a breeder of American Kennel Club (AKC) certified Labrador Retrievers.

II.

For a district court to have diversity jurisdiction over a civil matter, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. In contrast to a facial attack, a factual attack "challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based." *Neese v. Barr*, No. 7:20-CV-00260, 2020 WL 5096949, at *1 (W.D. Va. Aug. 28, 2020). In this situation, "the presumption of truthfulness normally accorded a complaint's allegations does not apply." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings

to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A dismissal should be granted only if "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

III.

The defendants first argue that text messages sent by Cain prove that Grace is worth $5,800, not $25,000 as claimed by the plaintiff in its complaint. The relevant part of Cain's text message states:

> Finding RaeLynn [Grace's mother] was quite a process. I looked for 8 months before deciding on RaeLynn's breeder. I visited other litters and kennel/puppyraising program. Then waited 6 months for Rae's Mom to be bred and for Rae to be ready to take home. Then there is the 2 years to wait for health clearances (cost of about $1k) and the change in registration from limited to full. RaeLynn cost $3,800, plus another $2k when I wanted the breeder to release breeding rights. That is what I would need to replace Grace. I spent that much money for a long term breeding program. It was very expensive to get the breeding program set up… and if you keep Grace, and I have to start over with another puppy. That puts me 2–3 years away from having pups for the non-profit.

Br. Supp. Mot. Dismiss Ex. A, Cain Text Msg., ECF No. 19-1. In response, the plaintiff argues that Grace's value is greater than $5,800, and that the numbers cited by Cain refer to RaeLynn, not Grace. As support, the plaintiff submits an affidavit from Cain. Resp. Opp'n Ex. 1, Cain Aff., ECF No. 23-1. She asserts that Cain9's breeding program cost around $15,000 to establish and that without Grace, the

-3-

program faces tens of thousands of dollars in additional costs due to the delay from finding another suitable dog. *Id.*

Second, the defendants provide an affidavit from Negron, an AKC certified breeder of Labrador Retrievers located in Pennsylvania. Negron is the part owner of Gallivant Labrador Retrievers and has been breeding dogs for more than twenty years. Negron was named Breeder/Owner/Handler of the Year at the Purina Pro Plan® Show Dogs of the Year Awards in 2024. One of the Gallivant dogs won the 2024 Westminster Kennel Club Dog Show for the Labrador Retriever breed. Several Gallivant Labradors have been trained as service dogs, and Negron sells unspayed female dogs for approximately $10,000. He states that, in his professional experience, the market value of a young dog does not reflect the dog's ability to have puppies. In response, Cain states that a breeding program that produces AKC competition caliber dogs is significantly different from one that breeds service dogs because the temperament, trainability, and mental and physical capability of a show dog is not comparable to those of a service dog. She asserts that a breeding program focused on producing service dogs increases the likelihood of raising successful service dogs and reduces the wash-out rate. Cain states that she has a zero percent wash-out rate as well as a fifty percent success rate for puppies successfully placed as service dogs or dogs-in-training, and dogs working on Therapy Canine certifications.

Repeating an argument from their previous motion, the defendants assert that the value of Grace's litters should not be included in the amount in controversy. However, as I have already decided, the plaintiff is not precluded from claiming the expected value of Grace's future litters. *Kindred Cain9 Connections, Inc. v. Booth*, No. 1:24CV00023, 2024 WL 3717506, at *2 (W.D. Va. Aug. 8, 2024). The defendants also challenge the factual basis of the $25,000 claimed as Grace's value. Therefore, the issue I must decide is solely whether Cain9 has stated specific facts beyond the pleadings to show that there is a genuine issue of material fact surrounding Grace's value.

I find that Cain9 has met its burden. In the affidavit submitted by Cain9, Cain states that the breeding program will suffer losses of tens of thousands of dollars if Grace is not returned. And in Cain's text messages, she explains that Cain9 will take on additional costs from restarting the breeding program with another dog, putting Cain9 "2–3 years away from having pups." Cain Text Msg., ECF No. 19-1. The amount alleged by the plaintiff thus contemplates that Grace's value stems, at least partially, from her availability for breeding and the time and effort spent selecting her.

Furthermore, Negron's affidavit does not prove that Cain9 has not alleged an amount in controversy that exceeds $75,000. Negron has achieved success with Gallivant Labrador Retrievers, but as noted by Cain, his show dogs are not the same

as service dogs.  Cain states that the "temperament, trainability, and mental and physical capacity of a show dog is not comparable to a Service Dog," and she cites her success and wash-out rates.  Cain Aff., ECF No. 23-1.  According to the Westminster Kennel Club, show dogs are judged by breed standards that can include "general appearance, movement, temperament, and specific physical traits such as height and weight, coat type, coat color, eye color, and shape, ear shape and placement, feet, tail, and more."  Westminster Kennel Club, *Learn Dog Shows*, https://www.westminsterkennelclub.org/dog-shows/ (last visited Jan. 2, 2025).  It is clear that, while there may be some overlap, breeders of show dogs and service dogs select for very different traits.  I therefore cannot conclude to a legal certainty that Cain9 claims $75,000 or less.

For the foregoing reasons, the defendants' Second Motion to Dismiss, ECF No. 18, is DENIED.

It is so **ORDERED.**

ENTER: January 2, 2025

/s/  JAMES P. JONES
Senior United States District Judge